BLISS & WOOD v. I. P. COUCH, *as Sheriff of Harper County.*

1. CHATTEL MORTGAGE—*Vigilant Creditor.* If a *bona fide* creditor, by his vigilance, obtains the first lien and prior right to all the property of his debtor, owned at the time a chattel mortgage is executed to secure him, it is the exercise of an undoubted right which he has, and the law will protect him in the advantage thereby secured. (*Randall v. Shaw*, 28 Kas. 419; *Tootle v. Coldwell*, 30 id. 125–134.)

2. ———— *Evidence; No Fraud.* The evidence in this case examined, and *held* not to establish that the chattel mortgage in dispute is fraudulent or void.

*Error from Harper District Court.*

REPLEVIN. The opinion states the facts. Trial by the court, at the October term, 1888, and judgment for the defendant, *Couch.* The plaintiffs, *Bliss & Wood*, bring the case to this court.

*Samuel Dalton*, for plaintiffs in error.

*Shepard, Grove & Shepard*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the court below, brought by C. A. Bliss, E. S. Bliss, and B. F. Wood, partners

doing business under the firm-name of Bliss & Wood, against I. P. Couch, as sheriff of Harper county, in replevin, to recover the possession of certain merchandise, goods, and chattels, of the value of $3,000. Trial by the court without a jury, and finding in favor of I. P. Couch, as sheriff, and judgment for the amount of an execution in his possession, as such sheriff, of $396.20. The facts in this case are substantially as follows: On the 15th day of March, 1886, U. E. Millspaugh, Robert Highman, and J. F. Millspaugh, comprising the firm of Millspaugh, Highman & Co., made, executed and delivered to C. A. Bliss, E. S. Bliss, and B. F. Wood, comprising the firm of Bliss & Wood, a chattel mortgage on all the goods and merchandise owned by them in Attica. The mortgage was given to secure the payment of $3,518.59. The indebtedness was evidenced by four promissory notes, one for $1,000, dated January 1, 1886, due in three months from its date; one note for $800, dated January 1, 1886, due in four months from its date; one note for $1,000, dated January 1, 1886, due in six months from its date; and one note for $645, dated February 13, 1886, due in ten days from its date, all bearing interest at the rate of 12 per cent. per annum, from their respective dates, and all signed by the firm of Millspaugh, Highman & Co., and payable to the firm of Bliss & Wood. The chattel mortgage provided that Bliss & Wood might appoint the firm of Millspaugh, Highman & Co. agents to make sale of the goods and merchandise in the ordinary course of trade, and to keep an accurate account of such sales, and to forward such accounts and proceeds of all sales, less the expenses of carrying on the business, to the firm of Bliss & Wood, at Winfield, in this state, on the first of each and every month after the date of the chattel mortgage until the indebtedness was fully paid. This mortgage was filed for record on the 16th day of March, 1886. On the same day Bliss & Wood took possession of the property, under and by virtue of the mortgage, and appointed Millspaugh, Highman & Co. their agents to sell and dispose of the property in the usual course of trade, and to account to the firm of Bliss & Wood

for the money realized on account of the sales of the property, less what was actually necessary to pay running expenses, and less what was necessary to be used in purchasing such staple articles as were essential and necessary to have, to keep the stock up so as to meet the demands of the trade. The note calling for the sum of $645 and interest on same was paid, and credits amounting to the sum of $267 were made upon the note calling for the sum of $800, with money realized from the sale of the goods described in the chattel mortgage. Bliss & Wood held the possession of the mortgaged property from the 16th day of March, 1886, to the 3d day of December, 1886, at which time I. P. Couch took possession of the property, under and by virtue of an execution issued out of the district court of Harper county, at the instance of Smith & Co., creditors of Millspaugh, Highman & Co. The execution was dated on the 12th day of November, 1886.

It is contended that there is no evidence to sustain the general finding of the court in favor of I. P. Couch, the sheriff. We have carefully examined the record, and do not find that there is any evidence tending to show that the chattel mortgage executed by Millspaugh, Highman & Co. to Bliss & Wood was fraudulent or void. It appears from all the evidence that the mortgage was given to secure the payment of a *bona fide* indebtedness for flour.

In *Frankhouser v. Ellett*, 22 Kas. 147, a majority of the court decided that—

"The statute authorizes a stipulation in a chattel mortgage for a retention of the possession by the mortgagor, and that a possession retained in accordance with the terms of such mortgage, is not, when duly filed, *per se* fraudulent, or even *prima facie* evidence of fraud as against creditors and subsequent purchasers."

A majority of the court further decided in that case that—

"The mortgagor, if he may keep the possession, may as well make the sales as a stranger. He acts in that respect as a *quasi* agent, at least, of the mortgagee, and as such agent and salesman is entitled to compensation for his services."

See, also, *Swiggett v. Dodson,* 38 Kas. 702; *Rankine v. Greer,* 38 id. 343.

We know that—

"Fraud is rarely susceptible of positive proof, for the obvious reason that it does not cry aloud in the streets, nor proclaim its iniquitous purposes from the housetops. Its vermiculations are chiefly traceable by covered tracks and studious concealments."

Notwithstanding this general doctrine, fraud is never presumed, but must be established by some evidence. If a creditor of a mortgagor assails the mortgage or transfer for fraud, the burden of proof rests upon him. (*Baughman v. Penn,* 33 Kas. 504.) In *Long v. West,* 31 Kas. 293, it was decided that—

"In the absence of evidence to the contrary, honesty and fair dealing in all transactions are always presumed, and if any person claims that there was fraud in any transaction, it devolves upon such person to prove the fraud, and it does not devolve upon the party charged with committing the fraud to prove that the transaction was honest and *bona fide.*"

Although Millspaugh, Highman & Co. were insolvent at the time of the execution of the chattel mortgage to Bliss & Wood, they had the right to prefer Bliss & Wood as creditors, if the same was done in good faith. (*Arn v. Hoerseman,* 26 Kas. 413; *Randall v. Shaw,* 28 id. 419; *Avery v. Eastes,* 18 id. 505; *Bishop v. Jones,* 28 id. 680; *McPike v. Atwell,* 34 id. 142; *Cuendet v. Lahmer,* 16 id. 527.) It was decided in *Randall v. Shaw,* 28 Kas. 419, that "the vigilant creditor is entitled to the advantage secured by his watchfulness and attention to his own interest."

There was some evidence introduced upon the trial on the part of the defendant below showing that the members of the firm of Millspaugh, Highman & Co. were brothers-in-law of E. S. Bliss; that other mortgages were also executed by Millspaugh, Highman & Co. to Bliss & Wood, to secure the same indebtedness embraced in the chattel mortgage; that a mortgage by Millspaugh, Highman & Co., to secure E. S. Bliss, as

a surety, had been paid, but not released; that after this action was commenced, Bliss & Wood traded off the stock of goods for a farm worth about $4,000. But we do not think that any of these things, or these all together, with some other matters that were presented upon the trial, establish that the chattel mortgage of Millspaugh, Highman & Co. to Bliss & Wood was given without consideration, or was fraudulent.

We think it was proper for the trial court to admit evidence of everything connected with the possession of the property under the chattel mortgage, and the sale and transfer of the goods by Bliss & Wood, as throwing light on the transactions between the parties to the chattel mortgage. But all of the mortgages given to secure the indebtedness existing from Millspaugh, Highman & Co. to Bliss & Wood were not excessive in value, and the amount of the indebtedness in the mortgages was not exaggerated or over-valued. It is possible that, upon a new trial, something may develop the *mala fides* of the transactions between Millspaugh, Highman & Co. and Bliss & Wood, but, upon the evidence presented in this record, we cannot see how the chattel mortgage can be defeated or set aside. If Bliss & Wood have received under their mortgage more than sufficient proceeds to pay their indebtedness, they may be held to account to the creditors for any overplus.

It is claimed upon the part of plaintiff below, that I. P. Couch, as sheriff, did not have in his possession the goods and merchandise in dispute at the time that the last order of delivery was issued and served. He did have, however, the actual possession of the goods when the petition was filed, and when the first summons and the first order of delivery were issued. These were set aside on account of the irregularities and alias orders issued.

On January 27, 1887, the court directed the goods and merchandise to be turned over to the defendant below. He did not file any disclaimer, but attempted to show title in himself, and the right of possession incident thereto, under an execution properly issued and placed in his hands. There-

fore no proof of demand or refusal was required. (*Raper v. Harrison*, 37 Kas. 243; *Bogle v. Gordon*, 39 id. 31; *Machine Co. v. Mann*, 42 id. 372; Civil Code, § 184; *Morrill v. Douglass*, 14 Kas. 293; *Higbee v. McMillan*, 18 id. 133.)

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.