**ALL SERVICE LIFE INSURANCE COR-
PORATION, an Arizona Corporation,
Plaintiff,**

v.

**George CATLING, Defendant.**

**No. 289-58.**

United States District Court
S. D. California,
Central Division.

March 26, 1959.

Nola McLane, Los Angeles, Cal., for plaintiff.

Dolley, Jessen & Painter, Los Angeles, Cal., for defendant.

HALL, District Judge.

The Defendant's Motion to dismiss the First Amended Complaint is based upon two grounds: First, that the facts alleged are not sufficient to constitute a cause of action for fraud, and second, the statute of limitations has expired, and plaintiff has not pleaded facts which would bring them within the exception of West's Ann. California Code of Civil Procedure, § 338 which does not toll the statute until discovery of the fraud.

Neither point is well taken.

Briefly, the Complaint, in substance, alleges that the plaintiff is an Insurance Company; that the defendant Catling, in 1954, secured by assignment a Management Contract covering the insurance functions of the plaintiff; that said defendant thereby securing control of plaintiff, elected certain directors, appointed officers of the plaintiff, and generally controlled the corporation; that defendant sold to one Messick the said

Management Contract on the representation that Messick could use the sum of $110,000 belonging to the plaintiff to pay Catling for said Management Contract; that thereafter the Board of Directors, controlled by the defendant Catling, authorized Messick to execute and endorse checks drawn on the plaintiff, and thereupon, Catling and his directors resigned, whereupon Messick and two others were elected as plaintiff's Directors, and paid to defendant Catling the sum of $110,000 from plaintiff's cash reserves, by check, which check was cashed by defendant Catling; that all of said matters and things were concealed by deceptive and misleading entries in plaintiff's books and records until an examination of plaintiff's financial condition was made by the State of Arizona in March, 1956, but that the true nature of the transaction was not discovered by the plaintiff until after June 6, 1957, when said Messick and other officers and directors resigned from the plaintiff corporation, and an audit was made by the present directors.

■ The Complaint alleges sufficient facts to show (a) lack of knowledge, (b) lack of means of obtaining knowledge, and (c) lack of reasonable opportunity to obtain the knowledge, and (d) how and when the fraud was actually discovered, which latter date was within the period of the statute of limitations.

This being a fraud action, no hard and fast rule has ever yet been formulated by the courts or the legislature as to just what should be alleged to constitute fraud. This for the obvious reason that each case of fraud must depend upon the individual facts and surrounding circumstances that are presented in that case.

Fraud is as varied as the ingenuity of man.

"It does not cry aloud in the streets, or proclaim its iniquitous purposes from the house tops. Its vermiculations are chiefly traceable by covered tracks and studious concealments." Bliss v. Couch, 46 Kan. 400, 26 P. 706, 707.

"It is quite true that evidences of fraud are not left lying patent in the sunlight, that fraud itself is always concealed, and that the truth is to be discovered more often from circumstances, from the interests of the parties, from the irregularities of the transaction, coupled with injury worked to an innocent party, than from the direct and primary evidence of the fraudulent contrivance itself." Levy v. Scott, 115 Cal. 39, 41, 46 P. 892, 893.

As stated by Judge DeWitt in a very early case—Merchants' Nat. Bank. v. Greenhood, 16 Mont. 395, 439, 41 P. 250, 259, 851:

"Fraud cannot often be proved by direct evidence. Fraud conceals itself. It does not move upon the surface in straight lines. It goes in devious ways. We may with difficulty know 'whence it cometh and whither it goeth.' It 'loves darkness rather than light because its deeds are evil.' It is rarely that we can lay our hands upon it in its going. We are more likely to discover it at its destination, before we know that it has started upon its sinuous course. When we do discover it, the searchlight of a judicial investigation goes back over its trail and lightens it from beginning to end. As the woodsman follows his game by slight indications, as a broken twig or a displaced pebble, so fraud may become apparent by innumerable circumstances, individually trivial, perhaps, but in their mass 'confirmation strong as proofs of holy writ.' The weight of isolated items tending to show fraud may be 'as light as the shadow of drifting snow,' but the drifting snow in time makes the drift, the avalanche, the glacier. Fraud may cover the history of the acts of a man like the leaden-hued atmosphere upon the house of Usher, 'faintly discernable but pestilent, an atmosphere which has no affinity with the air of heaven.'"

■ Finally, it must be kept in mind that whether or not a complaint states a cause of action must be measured by the statement of the Supreme Court in Con-

ley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, that: " * * * a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Defendant will have twenty (20) days to answer.

Both parties will show cause on April 27, 1959, at 10:00 o'clock A.M., why Messick should not be summoned to appear in the action under F.R.Civ.P. 19(b), 28 U.S.C.A.